**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 11, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

  Plaintiff-Appellant,

v                                                No. 127115

JOHN LAVELL WILLIAMS,

  Defendant-Appellee.

_____

**PER CURIAM**

This case concerns the constitutionality of a traffic stop.  After stopping defendant's vehicle for speeding, a state trooper asked defendant routine questions about his travel plans and obtained his consent to search the vehicle.  Cocaine and marijuana were discovered during the search.  Defendant argues, and the Court of Appeals determined, that his consent was invalid because his detention exceeded the proper scope of a traffic stop, in violation of the Fourth Amendment.  The Court of Appeals

held that the trial court should have suppressed the fruits of the search.[1]

We conclude that the detention was reasonable and did not exceed the proper scope of a traffic stop. Because defendant's Fourth Amendment rights were not violated as a result of the detention, his consent was valid. We reverse the judgment of the Court of Appeals and remand this case to the trial court for reinstatement of defendant's convictions and sentences.

## I. BACKGROUND

On February 14, 2003, Michigan State Police Trooper Jason Varoni observed defendant's vehicle traveling eighty-eight miles an hour on I-75 in Cheboygan County, where the posted speed limit was seventy miles an hour. He stopped defendant's vehicle. Upon request, defendant produced his driver's license. Trooper Varoni told defendant why he had been stopped and asked defendant where he was going. Defendant answered that he was going to Cheboygan to visit friends and that he was staying at the Holiday Inn.

Because Cheboygan does not have a Holiday Inn, Trooper Varoni was suspicious of this response and asked defendant to step from the vehicle to answer additional questions.

---

[1] Unpublished opinion per curiam, issued August 5, 2004 (Docket No. 249853).

2

Defendant did so and, in response to further questioning, explained that he was coming from Detroit and that he intended to stay in Cheboygan for two days. No luggage was visible in the vehicle's passenger compartment; when asked about this, defendant said that he brought no luggage on the trip. Trooper Varoni asked defendant if he had "been in trouble before," and defendant disclosed that he had previously been arrested for a marijuana-related offense.

Trooper Varoni then questioned the vehicle's other two occupants about their own travel plans, but their inconsistent responses only increased his suspicions.[2] This questioning was completed about five to eight minutes after the traffic stop occurred. Trooper Varoni then informed defendant that he had received conflicting stories from the occupants of the vehicle. He asked for defendant's consent to search the vehicle, and defendant agreed.

Trooper Varoni contacted the Tuscarora Township canine unit, and asked that a drug-detection dog be sent to the scene. The canine unit arrived within three minutes and the dog signaled the presence of narcotics in the backseat

---

[2] The front-seat passenger claimed that he did not know where they were going or how long they would be gone; he confirmed that he had no luggage. The backseat passenger, defendant's wife, told Trooper Varoni that they were going shopping in Cheboygan and then Detroit. She said that they had made no arrangements for accommodations.

of the vehicle. Trooper Varoni did not find any narcotics in that area, and he asked defendant for consent to search the vehicle's trunk. Defendant initially agreed, but then withdrew his consent. A warrant was obtained, and the police discovered substances that appeared to be marijuana and cocaine.[3] Trooper Varoni wrote defendant a citation for speeding and two drug-related felonies, and arrested him.

Defendant was charged with possession with intent to deliver fifty grams or more but less than 225 grams of a substance containing cocaine, MCL 333.7401(2)(a)(iii), and possession with intent to deliver marijuana, MCL 333.7401(2)(d)(iii). He moved to suppress evidence of the controlled substances seized from his vehicle, asserting that the search[4] and seizure were predicated on an illegal detention. The trial court denied the motion. It concluded that the statements made by the occupants of the vehicle raised reasonable suspicions in Trooper Varoni's mind. It further concluded that the delay caused by the

---

[3] This was confirmed through later testing.

[4] Defendant disputes the validity of the initial search of the car; he does not separately challenge the validity of the later search of the trunk, which was conducted after Trooper Varoni obtained a search warrant and which led to the discovery of the controlled substances.

additional questioning was not unreasonable under the circumstances presented.

Defendant was convicted as charged following a bench trial, and was sentenced to consecutive prison terms of seven to twenty years (for the cocaine conviction) and two to four years (for the marijuana conviction).

Defendant appealed, challenging the trial court's denial of his motion to suppress, and the Court of Appeals reversed. Concluding that the initial traffic stop had been lawful, the Court then determined that the trooper "unlawfully exceeded the initial stop when he asked defendant to step out of the vehicle" to answer questions about his travel plans while the officer possessed only a "generalized hunch" that criminal activity was afoot. The trooper's questions had no relevance to the traffic stop, the Court held, and he had no reasonable suspicion of criminal activity to warrant asking the questions. The Court concluded that Trooper Varoni was acting on a "hunch," which is insufficient grounds for pursuing an investigatory stop. For these reasons, it reversed the trial court's ruling on the motion to suppress.

The prosecutor applied to this Court for leave to appeal.

## II. STANDARD OF REVIEW

This Court reviews a trial court's findings at a suppression hearing for clear error. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005); *People v Custer*, 465 Mich 319, 325-326; 630 NW2d 870 (2001). But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress. *Jenkins*, *supra*; *People v Oliver*, 464 Mich 184, 191-192; 627 NW2d 297 (2001).

## III. ANALYSIS

We review here the Court of Appeals determination that the traffic stop escalated into an illegal detention in violation of the Fourth Amendment, rendering defendant's eventual consent to search a nullity.

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[5]

---

[5] US Const, Am IV.

In assessing the protections created by this amendment, the United States Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.'" *Ohio v Robinette*, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) (citation omitted). Reasonableness is measured by examining the totality of the circumstances. *Id.* Because of "'endless variations in the facts and circumstances'" implicating the Fourth Amendment, reasonableness is a fact-intensive inquiry that does not lend itself to resolution through the application of bright-line rules. *Id.*, quoting *Florida v Royer*, 460 US 491, 506; 103 S Ct 1319; 75 L Ed 2d 229 (1983).

In analyzing the propriety of the detention here, we apply the standard set forth in *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).[6] Under *Terry*, the reasonableness of a search or seizure depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the

---

[6] *Knowles v Iowa*, 525 US 113, 117; 119 S Ct 484; 142 L Ed 2d 492 (1998) (despite existence of probable cause, a common traffic stop is more analogous to limited detention authorized by *Terry* than to an arrest) (quoting *Berkemer v McCarty*, 468 US 420, 439-440; 104 S Ct 3138; 82 L Ed 2d 317 [1984]).

circumstances which justified the interference in the first place."[7] *Terry, supra* at 20.

In this case, there is no dispute that the initial traffic stop was occasioned by defendant's speeding, and was therefore based on probable cause and was reasonable. *Robinette, supra* at 38. Under *Terry*, the remaining question is whether the subsequent detention was "reasonably related in scope to the circumstances" of this case. *Terry, supra* at 20. We conclude that it was.

As a threshold matter, the Court of Appeals erred when it agreed with defendant that the purpose of this traffic stop was fully effectuated when defendant handed Trooper Varoni his driver's license and other requested paperwork. This view of the essential nature of the traffic stop imposes an unreasonable restriction on an officer's ability to investigate a violation of the law.

A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and

---

[7] The reviewing court considers the objective facts relating to the traffic stop; the officer's subjective state of mind is not relevant to the determination whether the detention was proper. *Oliver, supra* at 199.

its context for a reasonable period.[8]  The determination whether a traffic stop is reasonable must necessarily take into account the evolving circumstances with which the officer is faced.  As we observed in *People v Burrell*, 417 Mich 439, 453; 339 NW2d 403 (1983), when a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised.[9]

It is no violation of the Fourth Amendment for an officer to ask reasonable questions in order to obtain additional information about the underlying offense and the circumstances leading to its commission.  For example, in addition to asking for the necessary identification and paperwork, an officer may also ask questions relating to

---

[8] There is considerable discretion allowed an officer charged with enforcing the traffic laws as a member of the executive branch of government.  This discretion can be exercised effectively only if an officer is allowed to ask reasonable questions concerning the context of a traffic offense.   To deny an officer the ability to ask reasonable questions, reasonably circumscribed in scope and duration, is to deny the officer the ability to reasonably exercise the officer's discretion.

[9] Put another way, when considering whether a detention is reasonably related in scope to the circumstances of the case, a reviewing court must consider whether "the officer's subsequent actions were fairly responsive to the emerging tableau—the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." *United States v Chhien*, 266 F3d 1, 6 (CA 1, 2001).

the reason for the stop, including questions about the driver's destination and travel plans. *United States v Williams*, 271 F3d 1262, 1267 (CA 10, 2001).[10] Specifically, an officer may ask about the "purpose and itinerary of a driver's trip during the traffic stop" in order to determine whether a "violation has taken place, and if so, whether a citation or warning should be issued or an arrest made." *United States v Brigham*, 382 F3d 500, 508 (CA 5, 2004). Such inquiries are "within the scope of investigation attendant to the traffic stop." *Id.*

Implicit in the authority to ask these questions is the authority to ask follow-up questions when the initial answers given are suspicious.[11] Likewise, there is no constitutional prohibition against asking similar questions of any passengers in the vehicle.[12]

---

[10] See also *United States v Givan*, 320 F3d 452, 459 (CA 3, 2003); *United States v Linkous*, 285 F3d 716, 719 (CA 8, 2002); *United States v Hill*, 195 F3d 258, 268 (CA 6, 1999); *United States v Johnson*, 58 F3d 356, 357 (CA 8, 1995).

[11] *United States v Johnson*, 58 F3d 356, 357-358 (CA 8, 1995).

[12] *Linkous, supra* at 719 (an officer may question the occupants of a vehicle to verify information provided by the driver).

10

Simply put, the Fourth Amendment does not impose a "one size fits all" rule of police investigation,[13] much less one that restricts the officer to informing the driver of the nature of the infraction, and subsequently obtaining the information necessary to fill out a citation. The Fourth Amendment requires only that the detention be *reasonable*—that is, that it be reasonably restricted in light of all the facts available to the officer. See *Robinette, supra* at 39.

That standard was satisfied here. Trooper Varoni introduced himself to defendant, explained the purpose of the stop, and obtained the necessary identification and paperwork in order to complete the citation for the civil infraction of speeding. In response to a routine question about his travel plans, defendant provided Trooper Varoni with an explanation that was implausible.[14] Therefore, even before Trooper Varoni could resolve the matter of

---

[13] See *Robinette, supra* at 39 ("In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.").

[14] The Court of Appeals stated that there were "plausible" innocent explanations for the statements made by the vehicle occupants. But the fact that such explanations can be imagined does not mean that Trooper Varoni acted unreasonably in seeking to resolve the inconsistencies. See *Oliver, supra* at 204.

11

defendant's violation of the traffic laws, he was presented with additional suspicious circumstances that warranted further investigation.

Trooper Varoni acted on these new suspicions by asking defendant additional questions about his travel plans and whether he had been in trouble before, and by briefly speaking with the vehicle's occupants. None of the answers provided by defendant or his companions allayed Trooper Varoni's suspicions. Moreover, the entire encounter took only five to eight minutes, at which time Trooper Varoni requested and obtained defendant's consent to search the vehicle.

After reviewing the facts and evaluating the totality of the circumstances, we conclude that the traffic stop here was reasonable in both scope and duration.

It follows that defendant was not being unlawfully detained when he was asked to consent to the search. Consent must be freely and voluntarily given in order to be valid. *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999); *Royer*, *supra* at 497. An investigatory stop, as occurred in this case, is not so inherently coercive that it renders involuntary consent given during the stop. *Royer, supra* at 501, 502; *People v Acoff*, 220 Mich App 396,

400; 559 NW2d 103 (1996).  There is no suggestion that defendant was coerced into giving his consent.[15]

It is unnecessary to consider whether Trooper Varoni had an independent, reasonable, and articulable suspicion that defendant was involved with narcotics, or even whether the Fourth Amendment might impose such a requirement under different circumstances.[16]  The detention and search here were reasonable because: (1) the initial traffic stop was lawful, (2) Trooper Varoni's questions about defendant's travel plans, and his limited follow-up, were reasonable and did not exceed the proper scope and duration of the initial traffic stop, and (3) after Trooper Varoni concluded his questioning, defendant voluntarily consented to the search of the vehicle.  All in all, rather than amounting to a constitutional violation, we find that

---

[15] Defendant's own actions show that he understood that he could refuse the request.  He later declined to consent to a search of the trunk.

[16] One aspect of an officer's ability to conduct a drug search without independent, articulable, and reasonable suspicion was addressed in *Illinois v Caballes*, 543 US ___; 125 S Ct 834; 160 L Ed 2d 842 (2005).  Employing the reasonableness standard of *Robinette*, the United States Supreme Court held that, as long as the traffic stop is not prolonged, an officer may use a drug-detection dog to sniff a vehicle during the stop, even if the defendant does not consent and the officer lacks reasonable, articulable suspicion that the occupants of the vehicle are involved with narcotics.

Trooper Varoni's work in this case amounted to excellent police work. The trial court properly denied defendant's motion to suppress evidence of the controlled substances found during the search of his vehicle.

## IV. CONCLUSION

Because the detention was reasonable and did not constitute a violation of defendant's Fourth Amendment rights, we reverse the judgment of the Court of Appeals and remand this case to the trial court for reinstatement of defendant's convictions and sentences. MCR 7.302(G)(1).

Clifford W. Taylor
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                              No. 127115

JOHN LAVELL WILLIAMS,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

I agree with the Court of Appeals that the trial court erred by denying defendant's motions to suppress and to strike the evidence provided by Trooper Jason Varoni. The trooper's questions of defendant were not reasonably related to the purpose of the traffic stop. Furthermore, defendant's statement to the trooper that he was staying at a Holiday Inn in Cheboygan could not evoke a reasonable suspicion that he was engaged in criminal activity. Therefore, I would affirm the decision of the Court of Appeals.

*Terry v Ohio*

Traffic stops are subject to the test established by the United States Supreme Court in *Terry v Ohio*, 392 US 1, 20; 88 S Ct 1868; 20 L Ed 2d 889 (1968). According to *Terry*, an officer's investigation of a traffic stop must be

"reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* A defendant may not be detained even momentarily without reasonable, objective grounds for doing so. *Florida v Royer,* 460 US 491, 498; 103 S Ct 1319; 75 L Ed 2d 229 (1983). The scope of the detention must be carefully tailored to the justification for the stop. *Id.* at 500.

Considering the totality of the circumstances, I would find that the officer's questioning in this case exceeded the permissible legal scope of inquiry regarding a speeding offense. It was not reasonably related to defendant's violation of the speed limit. Furthermore, I believe that the answers to the officer's questions did not give rise to an articulable suspicion that criminal activity was afoot.

## Scope of the Stop

Trooper Varoni detained defendant for driving in excess of the speed limit. An additional reason for the stop was that his vehicle had a cracked windshield. There was no reasonable articulable suspicion of any other offense.

Neither the United States Supreme Court nor the Michigan Supreme Court has ever ruled that questioning beyond the scope of a traffic stop is allowed. The Court of Appeals decision in this case accurately reflects Michigan

2

law. However, with this decision, the Court changes Michigan law to enlarge the permissible scope of an inquiry by a police officer during a routine traffic stop.

## Permissible Questioning

The questions "Why the rush?" and "Where are you headed in such a hurry?" from a police officer may be reasonably related to a traffic stop for speeding. They seek an admission of speeding.

But questions about a driver's destination, purpose, length of stay, and with whom he will be staying are meant to inquire into issues beyond a speeding offense. Not only have they nothing to do with a speeding offense, they are not helpful to a police officer's decision to release the driver or to issue a citation or warning.[1] *Ante* at 10.

On direct examination, Trooper Varoni testified that he asked defendant where he was going and that defendant offered that "he was going into Cheboygan to visit friends and that he was staying at the Holiday Inn." However, it is apparent from the cross-examination of Trooper Varoni that defendant did not volunteer this information to the

---

[1] The majority cites several federal circuit court of appeals cases for the proposition that questions about travel plans are reasonably related to the scope of a traffic stop. We are not bound by these decisions, and, as noted above, I find their logic defective.

trooper in response to a general question.  Instead, as Trooper Varoni admitted:

> *A.* Uh, it's—it's my practice to ask more than just for those three pieces of uh, documentation [referring to license, registration, and insurance paperwork].

> \* \* \*

> *Q.* All right. And then you proceeded to further this investigation by questioning Mr. Williams as to um, issues of where he was going and what he was going to do when he was there, is that correct?

> *A.* Yes.

> *Q.* And these questions weren't relevant to how fast he was going, were they?

> *A.* I-I ask everybody I stop where they're going to and where they are coming from.

> \* \* \*

> *Q.* My question was; the question about where he's going and how long he is staying is not relevant to how fast he's going and the purpose for your stop; is it?

> *A.* That's correct.

Without question, the trooper asked defendant questions that exceeded the scope of legal inquiry regarding a speeding offense.  The trooper evoked an answer regarding the location where defendant was planning to spend the night.  He also asked defendant if defendant had any prior narcotics convictions. Trooper Varoni testified:

> Um, I asked him if he had been in trouble before and uh, he told me that he had. I asked if

4

it had any—you know, related narcotics [sic], if he'd ever been arrested for anything to do with drugs and he told me that he had. I asked him for what and he said marijuana.

This question likewise was unrelated to the purpose of the traffic stop. Once defendant stated that he was staying at a Holiday Inn in Cheboygan in response to a question about where he would spend the night, the purpose of the investigation changed. Trooper Varoni's subsequent questions, having nothing to do with the scope of the traffic stop, changed the fundamental nature of the stop. What began as a routine traffic stop became an all-encompassing criminal investigation. Trooper Varoni admitted it:

> *Q.* Your purpose of the initial stop had seized [sic]; you weren't investigating speeding violation [sic] anymore were you?

> *A.* No, no I wasn't.

### Reasonable Suspicion of Criminal Activity

Even if Trooper Varoni's questions had been appropriate for a traffic stop, a second pertinent concern for the Court is whether defendant's answer provided a reasonable suspicion that criminal activity was occurring.

Trooper Varoni essentially admitted that he continued questioning the occupants of the vehicle on the basis of a hunch that something "wasn't quite right."

5

*Q.* [*Mr. Kwiatkowsi*]: Is it possible that he was in error as to where the Holiday Inn was?

*A.* [*Trooper Varoni*]: That's possible, yes.

*Q.* And the fact that someone misstates where they're staying um, you're saying that made you suspicious of him, is that right?

*A.* Uh, you—you can call it what you want, I don't know about suspicious but, yeah, it made me think twice about the statements he made.

*Q.* All right, so you weren't suspicious?

*A.* Yeah, I-I questioned his statements.

*Q.* Well, now when you're talking about suspicion you understand suspicious of something, right? Of some activity that's unlawful, right?

*A.* Yes, that could be.

*Q.* Well, what was it about that response that you were suspicious of that was unlawful?

*A.* I wasn't suspicious of any particular thing that was unlawful.

*Q.* So it was unparticularized suspicion is that what you're saying?

*A.* Um, I guess that could be.

*Q.* Okay. Because you couldn't put your finger on what it was you were suspicious of, right?

*A.* I was suspicious that something wasn't quite right.

*Q.* But you didn't know what it was, right?

*A.* That's right.

The trooper's intuition that "something wasn't quite right" and his observation that no luggage was visible in

6

the passenger compartment were the things that made him suspicious. The trooper admitted that it is not uncommon for people to carry luggage out of sight in the trunk. Therefore, the only valid reason for the trooper to be suspicious was defendant's statement that he was staying at a Holiday Inn in Cheboygan.

The fact that defendant answered with the name of a hotel chain that did not have a facility in Cheboygan hardly created a reasonable suspicion that criminal activity was afoot.[2] The next question of defendant, once he had stepped out of the vehicle, was whether he had any prior conviction for drugs. It was likewise unrelated to the traffic stop. This question is a further indicator that the trooper was acting on a mere hunch.

Where there is no articulable basis to suspect that a crime is being committed, the officer's questions amount to

---

[2] It is noteworthy that the explanations Mr. Williams and his two passengers gave are not as inconsistent as the prosecution would have the Court believe. Mr. Williams indicated that they were going to Cheboygan to visit friends and would be there "about two days." They would be staying at a Holiday Inn. His companion, Mr. King, indicated that he was not sure how long they were going to be gone. This is not inconsistent with defendant's statement.

Mrs. Williams indicated that they were planning to do some shopping in Cheboygan. She was not sure where they were staying; they did not have reservations. This is also not inconsistent with Mr. Williams's explanation.

nothing more than a fishing expedition. The questioning and the subsequent search in this case went beyond the scope of the traffic stop and were unsupported by any reasonable articulable suspicion.

I agree with the Court of Appeals that, given the totality of the circumstances, the trooper had insufficient grounds for pursuing an investigatory stop and conducted his investigation based merely on a hunch. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). I would affirm the decision of the Court of Appeals.

Marilyn Kelly

8